*BENITE vs. ALVA.*

APPEAL FROM THE COURT OF THE PARISH AND CITY
OF NEW ORLEANS.

By the laws of Spain prescription ran against a married woman during coverture, for her pharaphernal rights.

The facts are stated in the opinion of the court delivered by

*Porter, J.*

The petitioner was married in the year 1786, to one Guillaume Benite. Some time subsequent to the marriage he purchased a lot of ground, situated in this city, and subsequently sold it to the father of the petitioner. The father died in the year 1795; and immediately after his death, the husband sold again the property to one Gonzalez, under whom the present defendant claims. The petitioner was separated in property from her husband in the year 1830.

This action is brought by her to recover from the defendant part of the lot of which her father died possessed; and

which, she alleges, her husband sold contrary to law, and
against her consent.

The purchaser from her father, and his successors, including the present defendant, have been in peaceable, public, and uninterrupted possession of the premises for thirty-four years previous to the institution of this suit. They plead prescription against the demand of the petitioner.

The court below gave judgment against the defendant, and she appealed.

It is not contested that the purchaser had not the title, good faith, and length of possession that would have enabled him, under the laws of Spain, to plead the prescription of ten years. But the petitioner contends, that the provision in our code, which suspends prescription during marriage, where the action of the wife might be prejudicial to the husband, was common to the Spanish jurisprudence; and that, although ten years had elapsed from the sale to the time when the Civil Code was adopted, still the prescription did not run.

The case turns on this question. The property alienated was paraphernal: but neither in relation to it, nor to dotal effects, do we find the laws of Spain to conform with the provisions of our code.

By the latter, the dowry of the wife is imprescriptible during marriage, unless a separation takes place. *By the* 8 *law of the* 23 *title of the* 3*d Partidas* it may be prescribed for, if the wife knows of the husband's dissipation, and neglects to bring her action. *La. Code,* 3490.

In relation to the estate of the wife, which is paraphernal, the discrepancy is more strongly marked. The article in our code which preserves the wife's rights during marriage, when the action she might bring to maintain them would cast a reflection on, or affect the interests of her husband, is taken from the French jurisprudence: and the delicacy which suggested it does not seem to have been equally

fostered and rewarded in Spain. *Febrero* tells us that, though prescription does not run against the wife for her dotal property during marriage, unless she knew the husband was dissipating it, it does run for the paraphernal; because she may obtain an order from the judge, that her husband give her license to sue. *Febrero, p. 2, Lib. 3, Cap. 2. Sec. 4. No.* 243.

Counsel have contended that this rule only applies to cases where the husband neglects to take the wife's property into possession, and not to those where he has received, and alienated it. No authority has been produced for this exception; and we see no solid ground on which it can rest. The passage quoted from *Febrero*, shewing the right of the wife to sue for the property, at the dissolution of the marriage, which her husband may have alienated, evidently contemplates those cases where the purchaser has not acquired the object a sufficient length of time to hold by prescription. It is speaking of the general rights of the wife, without a consideration of the exception which might be opposed to her action, in particular cases. *Febrero, Art. 2d. Lib.* 1. *Cap.* 3. *Sec.* 1. *Nos.* 47, 48 *and* 49.

The article in our code was taken from the 2256th of the Napoleon, and copies it. That was derived from Pothier, who assigns as a reason for it, that the influence which the husband exercises over the wife, is supposed to have prevented her bringing an action during this marriage. Several of the provinces of France, he says, act on the principle; and he states it to be a case for the application of the rule, *contra non valentem agere non currit præscriptio*. *Dard*, in his commentary, or rather his annotations, on the Napoleon Code, refers to the French, and not to the Roman law, for the origin of the 2,256th article of that work.

The rule *contra non valentem agere non currit præscriptio*, is, no doubt, a sound one; and where there is an impossibility to sue, its force and equity cannot be disputed: it

is a necessary consequence of laws in relation to prescription; or, rather, it flows from the very principles on which they are established.   But where it is extended to cases where there is not an impossibility to bring an action; to, those where there is no other impediment but that which is supposed to exist in an unwillingness to sue, from motives of delicacy, affection, or marital influence, the exception ceases. to be one, which is presumed universal, as arising out of the nature of things, and must depend for its force on the laws of the particular country, which govern the transaction,. to which it is sought to be applied.

Our researches do not enable us to say, it has ever been extended so far in the Spanish law.   On the contrary, as often as the writers speak of the matter, they recognise a different doctrine: and we are of opinion the plea of prescription, in this case, must be sustained.

It is therefore ordered, adjudged, and decreed, that the judgment of the parish court be annulled, avoided, and reversed; and that there be judgment for defendant, with costs in both courts.

*Eastern District,
May* 1831

By the laws of Spain prescription ran against a married woman during coverture for her pharaphernal rights

